# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

MICHAEL POTEE,

                   Petitioner,          :    Case No. 1:18-cv-609

      - vs -                                District Judge Susan J. Dlott
                                            Magistrate Judge Michael R. Merz

Warden,
 Chillicothe Correctional Institution,

                                        :
                   Respondent.

# REPORT AND RECOMMENDATIONS

Petitioner Michael Potee brought this habeas corpus action under 28 U.S.C. § 2254 with the assistance of counsel (Petition, ECF No. 1). The case is now ripe for decision on the Petition, the State Court Record (ECF No. 7), and the Return of Writ (ECF No. 8). Although Magistrate Judge Litkovitz set a deadline of twenty-eight days after the Return was filed for the Petitioner to file a reply (ECF No. 3, PageID 109), he has not done so and the time to do so expired January 11, 2019.

The Magistrate Judge reference in the case was recently transferred to the undersigned to help balance the Magistrate Judge workload in the District (ECF No. 9).

**Litigation History**

The Clermont County grand jury indicted Potee on September 22, 2015, on one count of Involuntary Manslaughter (Ohio Revised Code § 2903.04(A))(Count 1); two counts of Corrupting Another With Drugs (Ohio Revised Code § 2925.02(A)(3))(Counts 2-3); one count of Trafficking in Drugs (Heroin) (Ohio Revised Code § 2925.03(A)(1)) (Count 4); and one count of Aggravated Trafficking in Drugs (Fentanyl) (Ohio Revised Code § 2925.03(A)(1)) (Count 5). (State Court Record, ECF No. 7, Exhibit 1, Indictment, PageID#121, Case No. 2015 CR 000515). Potee moved unsuccessfully to suppress the identification made by one of the victims, to transfer venue to Hamilton County, and to exclude evidence that he knew the deceased victim from prison. After verdict the trial judge merged some of the convictions and imposed an aggregate sentence of fifteen and one-half years.

Represented by counsel, Potee took a direct appeal to the Ohio Court of Appeals for the Twelfth District which affirmed the trial court judgment. *State v. Potee,* 2017-Ohio-2926 (12th Dist. May 22, 2017), appellate jurisdiction declined, 150 Ohio St. 3d 1454 (2017). Potee filed a *pro se* Application to Reopen the direct appeal under Ohio R. App. P. 26(B), asserting four assignments of error whose omission he alleged constituted ineffective assistance of appellate counsel (State Court Record, ECF No. 7, PageID 326, et seq.). The Twelfth District denied the motion to reopen and a later motion for reconsideration (State Court Record, ECF No. 7, Exhibits 36 & 40). The Supreme Court of Ohio declined appellate jurisdiction. State v. Potee, 152 Ohio St. 3d 1465 (2018).

With the assistance of counsel, Potee then filed his Petition in this Court, pleading the following four grounds for relief:

**Ground One:** Improper venue.

**Supporting Facts:** The drug transaction occurred in Hamilton County and the alleged victim ingested and over dosed on the drug in Clermont County. Michael Potee committed no act in Clermont County.

**Ground Two:** The trial court gave an improper jury instruction regarding venue.

**Supporting Facts:** If an offense is committed in more than one county RC 2901.12 (A) governs the location of the indictment and trial because "the trial in a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed." Because the commission of the offense occurred entirely in Hamilton County, the jury should have been instructed with the precise language of R.C. 2901.12(A). Instead the court instructed the jury on the language of RC 2901(H)(3)" one or more of the offenses...or any one of the essential elements of any one or more of the charges-the offenses charged against the defendant were committed or occurred in this county as part of criminal conduct committed by defendant."

**Ground Three**: The trial Court Erred by permitting prior bad acts of Potee as substantive evidence. Evidence Rule 404(B).

**Supporting Facts:** The State presented evidence of Potee's cellular text messages, in great detail, to demonstrate Potee had a history of dealing drugs. The State introduced evidence that Potee had $900 on a prior date to show Potee was a drug dealer and possed [sic] large amounts of cash at a time, other than the time in question. The trial court prohibited either party from discussing the $900 in a previous order dated April 12, 2016 and should have granted a mistrial.

**Ground Four:** Insufficiency of evidence.

**Supporting Facts:** Potee gave decedent/husband and wife one bindle of heroin. Decedent and wife split the bindle in half when they got to their Clermont County home where they ingested it. Husband died immediately and wife was revived with narcan. Decedent/husband had a high dose of fentanyl in his system. Narcan is not effective with fentanyl. The evidence is against Potee giving them fentanyl because wife was revived with narcan. There is no evidence Potee gave them fentanyl. The only logical explanation is

only husband ingested fentanyl. There is plenty of evidence found in the home of decedent they were heavy drug users. Fentanyl caused decedent/husband death.

(Petition, ECF No. 1, PageID 5-10).

# Analysis

## Ground One:  Improper Venue

In his First Ground for Relief, Potee argues that he was improperly tried in Clermont County because the evidence showed the drug transaction occurred in Hamilton County.  The Warden asserts this claim is not cognizable in habeas corpus.

Federal habeas corpus is available only to correct federal constitutional violations.  28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983).   "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar concurring).

The State of Ohio has, as a matter of constitutional law, territorial jurisdiction to punish crimes that occur within the State.  *Thomas v. Loney*, 134 U.S. 372, 376, 10 S. Ct. 584, 33 L. Ed. 949 (1890); *Yellowbear v. Wyoming Attorney General*, 525 F.3d 921 (10th Cir. 2008).  A claim that Ohio had convicted Potee of an offense which occurred entirely in another State would raise

a claim of lack of territorial jurisdiction under the Constitution. But no such claim is made here. As between the two adjacent Ohio counties, Hamilton and Clermont, the United States Constitution is not concerned where Ohio assigns venue.

Ground One should be dismissed for failure to state a claim upon which habeas corpus relief can be granted.

## Ground Two: Improper Jury Instruction on Venue

In his Second Ground for Relief, Potee asserts trial court error in the jury instruction on venue. As noted above for Ground One, questions of venue do not raise constitutional claims. A fortiori, errors in jury instructions about venue do not raise constitutional questions. Whether or not the instruction in question violated Ohio law is not a question this Court is empowered to reach in a habeas corpus case. *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995).

Ground Two should be dismissed for failure to state a claim upon which habeas corpus relief can be granted.

## Ground Three: Admission of Prior Bad Acts Evidence

In his Third Ground for Relief, Potee claims constitutional error in the admission of prior bad acts evidence in violation of Ohio R. Evid. 404(B). In particular he complains of (1) admission of text messages to demonstrate he had a history of drug dealing, (2) admission of evidence he possessed $900 in cash at a time shortly before the crime in suit.

The Warden argues that this claim is procedurally defaulted because it was not fairly presented to the state courts as a constitutional claim (Return, ECF No. 8, PageID 1814-15.)

Potee raised his "other bad acts" claim as his third assignment of error on direct appeal and the Twelfth District decided it as follows:

> [*P38] Assignment of Error No. 3:
>
> [*P39] THE TRIAL COURT ERRED AS A MATTER OF LAW BY PERMITTING EVIDENCE OF "OTHER ACTS" AS SUBSTANTIVE EVIDENCE.
>
> [*P40] Appellant contends the trial court abused its discretion by permitting the state to twice impermissibly introduce evidence outside the parameters of Evid.R. 404(B) to demonstrate appellant has a history of dealing drugs. Specifically, appellant argues the trial court erred by permitting the state to introduce appellant's text messages and the fact that he possessed $900 cash days before the couple overdosed. The trial court overruled appellant's objection and denied his motion for mistrial on the basis that appellant previously opened the door to the introduction of such evidence during his questioning of Detective Bail and Detective Mullis.
>
> [*P41] "A trial court has broad discretion in the admission and the exclusion of evidence and unless it clearly abused its discretion and appellant is materially prejudiced thereby, an appellate court should not disturb the decision of the trial court." *State v. Martin*, 12th Dist. Butler No. CA2007-01-022, 2007-Ohio-7073, ¶ 9, citing *State v. Finnerty*, 45 Ohio St.3d 104, 109, 543 N.E.2d 1233 (1989). An abuse of discretion is more than an error of law or judgment. Rather, it suggests the "trial court's decision was unreasonable, arbitrary or unconscionable." *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557, ¶ 8. "A review under the abuse-of-discretion standard is a deferential review." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14, 972 N.E.2d 528.
>
> [*P42] "'Evidence that an accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime or that he acted in conformity with bad character.'" *State v. Ward*, 12th Dist. Clermont No. CA2013-07-059, 2014-Ohio-990, ¶ 19, quoting *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 15, 983 N.E.2d 1278. However, if the defense first introduces or brings out other act evidence, then the state's later introduction of

such evidence does not constitute reversible error and the defendant waives objection on this basis. *State v. Hammons*, 12th Dist. Warren No. CA2004-01-008, 2005-Ohio-1409, ¶ 9.

[*P43] On cross-examination of the detectives, appellant specifically inquired into whether information obtained from appellant's cell phone and the search conducted at appellant's residence was indicative of drug trafficking. This inquiry focused heavily on indications of appellant's drug use and the lack of any indication of drug trafficking. Based on these lines of questioning, we find the trial court properly found appellant opened the door to questions by the state regarding any possible indicators of drug trafficking by appellant. Specifically, the state inquired about text messages concerning possible drug transactions and a large sum of cash previously held by appellant. These questions were probative of the issues previously inquired into by appellant; therefore, "[t]he state did no more than walk through a door opened by the appellant." *State v. Waver*, 8th Dist. Cuyahoga No. 73976, 1999 Ohio App. LEXIS 3860, *22 (Aug. 19, 1999). Accordingly, appellant waived any objection to such evidence, and the trial court did not abuse its discretion by permitting its introduction.

[*P44] Therefore, appellant's third assignment of error is overruled.

*State v. Potee*, 2017-Ohio-2926. Petitioner had argued this claim on appeal entirely in terms of Ohio R. Evid. 404(B)(Appellant's Brief, State Court Record, ECF No. 7, PageID 213-15). There is no mention of any constitutional violation nor any citation of Ohio case law employing federal constitutional analysis.

To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995); *Riggins v. McMackin,* 935 F.2d 790, 792 (6th Cir. 1991). The claim must be fairly presented at every stage of the state appellate process. *Wagner v.*

*Smith,* 581 F.3d 410, 418 (6th Cir. 2009).

"Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2004); accord, *Jacobs v. Mohr*, 265 F.3d 407, 415 (6th Cir. 2001); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 674, 681 (6th Cir. 2000); *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004).

Petitioner's Ground Three is procedurally defaulted because it was not fairly presented to the Ohio courts as a constitutional claim. It is also not a cognizable constitutional claim. "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003), noting that the Supreme Court refused to reach the issue in *Estelle v. McGuire*. 502 U.S. 62 (1991).

Ground Three should therefore be dismissed with prejudice.

**Ground Four: Insufficient Evidence to Convict**

In his Fourth Ground for Relief, Potee argues there is insufficient evidence to convict him of the death of Jeremy Adkins because Potee sold Adkins and his wife Rachel Joslin one bindle of heroin. Adkins died of an overdose of fentanyl. Joslin also overdosed, but was revived with two doses of Narcan. Since, Potee asserts, Narcan is not effective on fentanyl, the fentanyl that killed Adkins must have come from somewhere else.

On direct appeal, Petitioner made this argument as a manifest weight of the evidence claim rather than an insufficiency of the evidence claim (Appellant's Brief, State Court Record 7, PageID

211-12).  As Judge Ringland points out in the Twelfth District's decision, there is a substantial difference between a manifest weight claim and an insufficiency of the evidence claim.  *State v. Potee,* 2017-Ohio-2926 at ¶¶ 19-20.  Only the insufficiency claim raises a federal due process issue. *Id.* at ¶ 19, citing *Tibbs v. Florida*, 457 U.S. 31 (1982), and *Jackson v. Virginia*, 443 U.S. 307 (1979).  Nevertheless, a state court decision that a verdict is not against the manifest weight of the evidence a fortiori determines that there is sufficient evidence.  *Nash v. Eberlin,* 258 Fed. Appx. 761, 2007 U.S. App. LEXIS 29645 (6th Cir. Dec. 14, 2007); *Ross v. Miller*, No. 1:10-cv-1185, 2011 U.S. Dist. LEXIS 65082 (N.D. Ohio May 10, 2011)(White, M.J.); *Hughes v. Warden,* No. 1:10-cv-091, 2011 U.S. Dist. LEXIS 54131 (S.D. Ohio Apr. 27, 2011)(Merz, M.J.).

The Twelfth District's decision on the manifest weight claim is as follows:

> **[*P30]**  Next, we turn to appellant's argument his convictions are against the manifest weight of the evidence. In so doing, appellant repeats his venue argument as well as contends the evidence presented does not support a finding appellant was responsible for Adkins' death and Joslin's overdose. Appellant argues the state based its case on a single transaction of heroin between himself and Adkins, and that the state failed to prove why the drugs exchanged in this transaction resulted in Adkins' death, but only a mere overdose for Joslin. After a thorough review of the record, we find the jury did not clearly lose its way and create a manifest miscarriage of justice requiring reversal of appellant's convictions. With respect to the trafficking offenses, evidence was presented demonstrating appellant knowingly sold or offered to sell the controlled substances of heroin and fentanyl to Adkins. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). The analysis does not contemplate whether appellant knew the type and amount of the substance. *See State v. Doliboa*, 12th Dist. Warren No. CA2007-07-088, 2008-Ohio-5297, ¶ 39-42.

> **[*P31]**  Joslin's testimony regarding each stage of the transaction coupled with text messages and call logs between Adkins and appellant on the day of the transaction provided evidence for the jury to conclude appellant was aware his conduct would probably result in the sale of heroin or fentanyl. Moreover, Joslin's extensive description of appellant on the day of the transaction identified

appellant as the drug dealer. Joslin described appellant as a white male in his thirties with tattoos on both arms, who drove a white work van, had a twin brother, and lived in the Lakeshore Mobile Home Park in Goshen. Additionally, Joslin identified appellant as the dealer during a police lineup with 95 percent confidence, and again, identified appellant at trial. Joslin testified regarding each stage of the transaction, including the hand-to-hand transaction of one bindle of heroin in exchange for $20. The state presented evidence that police recovered a single bindle of heroin from the couple's apartment. At the apartment, police and an EMT observed Joslin unconscious and the EMT revived her by administering Narcan — a procedure consistent with opiate overdose. Moreover, the autopsy report identified heroin and fentanyl in Adkins' postmortem blood samples. Joslin testified the couple ingested the same drugs.

[*P32] With regard to the involuntary manslaughter offense, evidence was presented demonstrating appellant caused Adkins' death as a proximate result of the drug transaction. As explained above, the state presented evidence for the jury to reasonably conclude appellant committed a felony by selling heroin and fentanyl to Adkins. Additionally, "[t]he criminal intent of involuntary manslaughter is supplied by the criminal intent to do the underlying unlawful act of which the homicide is a consequence." *State v. Martin*, 12th Dist. Brown No. CA2003-09-011, 2004-Ohio-4309, ¶ 22. Therefore, since we previously determined evidence was presented for the jury to reasonably conclude appellant knowingly sold heroin and fentanyl to Adkins, evidence also existed for the jury to find the state proved the requisite criminal intent for involuntary manslaughter. Additionally, the state demonstrated Adkins' death was a proximate result of the drug transaction.

[*P33] "The term 'proximate result' in the involuntary manslaughter statute involves two concepts: causation and foreseeability." State v. Hall, 12th Dist. Preble No. CA2015-11-022, 2017-Ohio-879, ¶ 71. In regards to causation, we have held that "[g]enerally, for a criminal defendant's conduct to be the proximate cause of a certain result, it must first be determined that the conduct was the cause in fact of the result, meaning that the result would not have occurred 'but for' the conduct." *State v. Feltner*, 12th Dist. Butler No. CA2008-01-009, 2008-Ohio-5212, ¶ 13. With respect to foreseeability, this court has held "when the result varied from the harm intended or hazarded, it must be determined that the result achieved was not so extraordinary or surprising that it would be simply unfair to hold the defendant criminally responsible for something so unforeseeable." *Hall* at ¶ 78. Furthermore, a defendant will be held responsible for foreseeable consequences "which are

known to be, or should be known to be, within the scope of the risk created by his conduct." *Id.* at ¶ 79.

[*P34] The state presented evidence Adkins died from acute combined heroin and fentanyl poisoning. The testimony revealed that no other cause contributed to Adkins' death. Thus, the jury concluded based on the evidence presented that Adkins' death would not have occurred "but for" appellant selling him the heroin and fentanyl. Further, appellant knew or should have known of the possible consequences of ingesting heroin, as appellant testified he frequently used heroin himself and that he was aware of at least one other acquaintance dying from an overdose.

[*P35] In consideration of the corrupting another with drugs offenses, evidence was presented to show appellant knowingly furnished heroin and fentanyl to Adkins and Joslin or caused them to use such drugs, thereby causing them serious physical harm. We previously found above the jury's determination that appellant knowingly sold heroin and fentanyl to the couple was not against the manifest weight of the evidence. Pursuant to R.C. 2901.01(A)(5)(b) thru (c), serious physical harm means "[a]ny physical harm that carries a substantial risk of death" or "[a]ny physical harm that involves some permanent incapacity * * *." Dr. Looman testified overdosing on heroin and fentanyl creates a substantial likelihood of death. As explained above, Adkins died from ingesting the drugs purchased from appellant. Likewise, first responders found Joslin unconscious, which she testified occurred shortly after ingesting the same drugs as Adkins. *See State v. Church*, 12th Dist. Butler No. CA2011-04-070, 2012-Ohio-3877, ¶ 18 (stating losing consciousness constitutes serious physical harm as defined in R.C. 2901.01[A][5]).

*State v. Potee*, 2017-Ohio-2926.

Potee's argument is that since Joslin was revived with Narcan which is ineffective against fentanyl, the fentanyl that killed her husband must have come from some place other than Potee. But that argument depends on several suppositions that are not supported by the evidence. Adkins and Joslin purchased one bindle of drugs from Potee. Since the bindle was completely consumed, there is no evidence of how much fentanyl and how much heroin was in it. The combination was fatal to Adkins but not to Joslin, but there is no proof of the two victims' relative tolerance for

11

fentanyl or of whether the two drugs were evenly distributed in the bindle. Based on the Twelfth

District's findings, there was sufficient evidence that Petitioner proximately caused the death of

Adkins and serious physical harm to Joslin.

As the Twelfth District held, an allegation that a verdict was entered upon insufficient

evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United

States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970);

*Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th

Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the

crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the
> light most favorable to the prosecution, any rational trier of fact
> could have found the essential elements of the crime beyond a
> reasonable doubt . . . . This familiar standard gives full play to the
> responsibility of the trier of fact fairly to resolve conflicts in the
> testimony, to weigh the evidence and to draw reasonable inferences
> from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006);

*United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was

recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law

which determines the elements of offenses; but once the state has adopted the elements, it must

then prove each of them beyond a reasonable doubt. *In re Winship, supra.* A sufficiency challenge

should be assessed against the elements of the crime, not against the elements set forth in an

erroneous jury instruction. *Musacchio v. United States*, 577 U.S. ___, 136 S. Ct. 709, 193 L. Ed.

2d 639 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after

enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110

Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner
> challenges the constitutional sufficiency of the evidence used to
> convict him, we are thus bound by two layers of deference to groups
> who might view facts differently than we would. First, as in all
> sufficiency-of-the-evidence challenges, we must determine
> whether, viewing the trial testimony and exhibits in the light most
> favorable to the prosecution, any rational trier of fact could have
> found the essential elements of the crime beyond a reasonable doubt.
> See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.
> Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-
> evaluate the credibility of witnesses, or substitute our judgment for
> that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th
> Cir. 1993). Thus, even though we might have not voted to convict a
> defendant had we participated in jury deliberations, we must uphold
> the jury verdict if any rational trier of fact could have found the
> defendant guilty after resolving all disputes in favor of the
> prosecution. Second, even were we to conclude that a rational trier
> of fact could not have found a petitioner guilty beyond a reasonable
> doubt, on habeas review, we must still defer to the state appellate
> court's sufficiency determination as long as it is not unreasonable.
> See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus

case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to

the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*,

541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc);

*Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based

upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656

(6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal
> habeas proceedings because they are subject to two layers of judicial
> deference. First, on direct appeal, "it is the responsibility of the jury
> -- not the court -- to decide what conclusions should be drawn from
> evidence admitted at trial. A reviewing court may set aside the jury's
> verdict on the ground of insufficient evidence only if no rational trier

> of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.
> S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam).
> And second, on habeas review, "a federal court may not overturn a
> state court decision rejecting a sufficiency of the evidence challenge
> simply because the federal court disagrees with the state court. The
> federal court instead may do so only if the state court decision was
> 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S.
> ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43

(2012) (per curiam).

Because the state courts' manifest weight decision implies there was sufficient evidence

and is not an unreasonable determination of the facts based on the evidence submitted, it is entitled

to deference under 28 U.S.C. § 2254(d).  Potee's Fourth Ground for Relief should therefore be

dismissed on the merits.


**Conclusion**


Based on  the foregoing analysis, it is respectfully recommended that the Petition be

dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion,

Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth

Circuit that any appeal would be objectively frivolous and therefore should not be permitted to

proceed *in forma pauperis*.


November 29, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).